EXHIBIT "B"

Affidavit of Margaret Wallace

Gary Adelman (GA7138)
BARTON, BARTON & PLOTKIN, LLP
420 Lexington Avenue, Suite 1830
New York, NY 10170
Phone: (212) 687-6262
Fax:   (212) 687-3667
*Attorneys for the Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MARGARET WALLACE,                                           07 Civ. _____

                             Plaintiff,     Judge:

           -against-                                   Magistrate:

JASON CALDERONE, TOM ESTESS, and            **AFFIDAVIT OF**
KALLE WIK,                                  **MARGARET WALLACE**


                            Defendant(s).

-----------------------------------------------------------X
STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK   )

      MARGARET WALLACE, being duly sworn, deposes and states under penalties of perjury as follows:

      1.     I am a shareholder of Skunk Studios, Inc. (hereinafter "Skunk Studios") and the Plaintiff in this action, and as such, I have complete knowledge of the facts as set forth herein.

      2.     This affidavit is submitted in support of the instant application, which seeks a Temporary Restraining Order and a Preliminary Injunction immediately restricting the Defendant or any person on behalf the Defendants or Skunk Studios from buying, selling, conveying, assigning, reassigning, transmitting, transferring, pledging or issuing any stock in

Skunk Studios while this application is being reviewed by the Court and while this lawsuit is pending, and for such other and further relief as this Court deems just, proper, and equitable.

3. I am currently a shareholder of Skunk Studios and was its Chief Executive Officer until about February 1, 2007. Skunk Studios is a California-based company in the business of developing casual single-player online video games with a website of http://games.skunkstudios.com/.

4. At the time I joined Skunk Studios, I brought numerous contacts with me, namely my acquaintances who are affiliated with notable companies in the gaming industry, such as: Atom Entertainment, Inc. (shockwave.com), RealNetworks, Inc., Mattel, Inc., Ubisoft, Inc., Viacom International, Inc., Microsoft Corporation, Warner Bros. Entertainment, Inc., and the Walt Disney Company. As a result, Skunk Studios signed several profitable business contracts with these companies.

5. In fact, one of the first contracts ever signed by Skunk Studios was a sixty-thousand dollar ($60,000.00) deal with Mattel, Inc., which we got through my contact.

6. After relocating to New York, in a letter sent to the remainder of the members of Skunk Studios, I officially resigned from my position as the Skunk Studios CEO and informed the rest of the company members that I would no longer be working at Skunk Studios on a daily basis.

7. However, as agreed, I remained active in my pursuits to provide Skunk Studios continuing help to obtain lucrative gaming contracts. I organized several business arrangements on behalf of Skunk Studios even after my official exit from the company.

8. Thereafter, I received a letter dated April 24, 2007 from Skunk Studios, shockingly declaring that the Defendants have taken it upon themselves to issue "new stock

options to the remaining shareholders...which would have...the direct effect of substantially diluting [only my] interest."

9. Upon information and belief, the Defendants have absolutely no right or justification to engage in this dilution.

10. Additionally, in order to couch their apparently unlawful behavior, in the letter, the Defendants have accused me, without any proof, of allegedly breaching my fiduciary duties to the company and seizing the company's corporate opportunity, all because I created of a new company called Rebel Monkey, LLC (hereinafter "Rebel Monkey"), which is completely unrelated to Skunk Studios.

11. The Defendants' April 24, 2007 letter fails to mention however that I actually formed Rebel Monkey with a partner, Nicholas Fortugno, who is *completely unassociated* with Skunk Studios. In fact Mr. Fortugno owns half of Rebel Monkey or fifty percent (50%) of its shares, as shown in the Operating Agreement.

12. Furthermore, Mr. Fortugno and I used purely our own business know-how and expertise in the gaming industry in forming Rebel Monkey and never used any physical nor intellectual property of Skunk Studios, Mr. Fortugno not even having access to it. Also, Rebel Monkey does not even use the same development tools for its games as Skunk Studios.

13. In fact, in regards to the business contacts of Rebel Monkey, it must be noted that Mr. Fortugno is the lead contributor, and his connections in the video game industry are a major cause of Rebel Monkey's successful operation.

14. Additionally, throughout the time that the formation of Rebel Monkey was underway and as late as February 2007, I believe I proved my dedication to Skunk Studios, a

company which I actually helped develop, by entering into some lucrative deals on behalf of Skunk Studios.

15. For example, on or about August 29, 2006, I signed a five-hundred thousand dollar ($500,000.00) deal with RealNewtoks, Inc. on behalf of Skunk Studios.

16. In addition, on or about January 23, 2007, which is *after* Rebel Monkey was formed, I arranged for the Skunk Studios logo to appear on approximately four-thousand (4,000) invitations to the entire causal game industry as a sponsor of a large industry party hosted by the internationally-known Casual Games Association.

17. I actually continued sending business to Skunk Studios until as late as February 2007, therefore; clearly, I was not keeping all the contacts for Rebel Monkey.

18. On May 4, 2007, I had my attorneys to draft a letter to the Defendants, responding to their assertions. That letter asked the Defendants to substantiate their allegations against me and informed the Defendants or their rights, including that they are, upon information and belief, in violation of California law. However, I initially wanted and asked to resolve this matter amicably and in good faith suggesting that perhaps we should engage in meaningful dialogue before petitioning the Court to intervene.

19. Nonetheless, to this date, there has been no response on the part of the Defendant's to our May 4, 2007 letter. Therefore, there is currently an urgent threat that Defendants may at any minute unlawfully dilute my interest in Skunk Studios, as their letter states that they have already issued the new stock options.

20. As such, I respectfully ask this Court to enjoin and restrain the Defendants from handling, managing, and using Skunk Studios stock until this Court issues a final determination in regards to my rights in the ownership of the company.

_____
MARGARET WALLACE

Sworn to before me this
___ day of May, 2007.

_____
Notary Public

SARAH M. MATZ
Notary Public, State of New York
No. 01MA6154371
Qualified in New York County
Commission Expires 10/23/2010