Philip Bramson
Laurence Rabinovich
SCHINDEL, FARMAN & LIPSIUS LLP
14 Penn Plaza, Suite 500
New York, New York 10122
Tel:   212-563-1710

Richard Osman
BERTRAND, FOX, & ELLIOT
2749 Hyde Street
San Francisco, California 94109
Tel:   415-353-0999
Fax:   415-353-0990
Attorneys for Defendants Skunk Studios,
Jason Calderone, Tom Estess, and Kalle Wik

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Margaret Wallace,

                 Plaintiff,

-against-

Motion to Dismiss
Skunk Studios, Inc., Jason Calderone,
Tom Estess, and Kalle Wik,
                 Defendants.

07-CIV03899

Judge Daniels

Affidavit of Kalle Wik in Support
of Defendants' Letter Response To
Plaintiff's Sur-Reply To Motion To
Dismiss For Lack of Personal
Jurisdiction and Improper Venue, or
in the Alternative To Transfer Venue

---

STATE OF CALIFORNIA      )
                                     ) ss
COUNTY OF SAN FRANCISCO  )

KALLE WIK, being duly sworn, deposes and states under penalties of perjury as follows:

1. I am the President of Skunk Studios Inc., and I am a named defendant in the above referenced action. I am also a shareholder of Skunk Studios Inc. I have personal knowledge of the facts and circumstances contained within this declaration and could, if called, competently testify thereto.

2. I am making this Affidavit in Support of defendants Skunk Studios Inc., Jason Calderone, Tom Estess, and Kalle Wik's Motion to Dismiss for lack of jurisdiction and improper venue. Starting with paragraph 4 of this declaration, each paragraph is numbered the same as the paragraph's in plaintiff's affirmation to which I am responding. In other words, paragraph 5 of this affirmation will directly correspond to paragraph 5 of plaintiff's affirmation.

3. At the outset, I need to again make clear, no defendant has taken any step to dilute plaintiff's stock in Skunk Studios. Furthermore, although the corporation did repurchase shares from a former shareholder, those shares have not been distributed to anyone. <u>There simply has been no dilution of plaintiff's shares</u>.

4. It is true that Skunk Studios retains an IP lawyer in New York.

5. It is true that Margaret Wallace has attended events, press conferences and business meetings in New York sporadically. However, she neglects to disclose that she is the only member of Skunk Studios to attend any event, press conference or business meeting in New York in the 6 years that Skunk Studios has been doing business. In fact, neither Kalle Wik, Thomas Estess, nor Jason Calderone has EVER been to New York for any business reason at any time from 2001 to the present. A primary reason Ms. Wallace spent time in New York, despite the fact that Skunk Studios was headquarted and operated in San Francisco, was her long-distance relationship with Nick Fortugno, the co-founder of her new company. Ms. Wallace moved to New York to live with Mr. Fortugno in the beginning of 2006.

6. It is true that Margaret Wallace personally organized and attended the gathering referenced by plaintiff. It was not attended by any other Skunk Studios member or employee. The statement that this was "for the launch of its East Coast Office" is a major exaggeration (perhaps even a half truth!). If you read the thread, attached to plaintiff's affirmation as Exhibit A, it states, "join us to celebrate the establishment of a Skunk Studios outpost on the East Coast". This outpost was evidently Margaret staying with Mr. Fortugno at his residence, I suppose - certainly not the "launch of an East Coast office" as claimed by plaintiff.

7. It is true that Skunk Studios sponsored the referenced party.

8. Margaret did take several trips to New York, for personal and business reasons. No other member of Skunk Studios ever traveled to New York on business. Skunk Studios does NOT continue to travel to New York for business, which directly contradicts the statement Ms. Wallace makes stating that she is "certain" Skunk Studios would continue these activities.

9, 10, 11. Margaret Wallace has had business-related activity in New York.

12. New York entities are not of significant importance to Skunk Studios from a revenue perspective. Oberon Media and Shockwave.com (based in San Francisco, recently acquired by Viacom, Inc.) are the exceptions and both were noted as such in my prior affirmation.

**I. Game Trust, Inc.**

13. When $0 revenue is the result of a contract, and the publishing of titles has ceased, it does seem insignificant in my estimation. As well, this relationship ended approximately 2 years ago.

14. Governing law provisions are standard in most if not all distribution contracts, and to the best of my knowledge, we have never contested one.

15. and 16. True

17. Skunk Studios upheld its obligation to put the GameTrust games onto the

SkunkStudios.com website, and ran them for several months. When Skunk Studios launched a new website, we reviewed the fact that these games had generated $0 revenue and chose to not include them on the updated website.

18. It is true that we exchanged emails about putting a Skunk Studios game on the GameTrust service. Ms. Wallace neglects to include the outcome, which was that both parties concluded it was not worth pursuing, and it was dropped from consideration.

## II. Boonty, Inc.

20. Although plaintiff claims that Boonty has moved its corporate headquarters to New York, I am unaware of that. The evidence she provides in support of this is a website printout that actually does not state that New York is its corporate headquarters. It just lists Paris and New York as its two addresses. At the time of our contract with Boonty, they were located in Paris.

21. I was not aware that Romain Nouzareth, the CEO of Boonty had relocated to New York.

22. and 23. The email correspondence between Mr. Nouzareth and me does not contradict my statement that we have not updated our contract with Boonty, but only evidences that I was engaged in a continued effort to collect unpaid sums from Boonty.

## III. Viacom, Inc.

24. Shockwave.com represents the only legitimate business connection to Viacom resulting in a contract or revenue for Skunk Studios (other than the VH1 project - an early work-for-hire engagement which was not brought forth previously).

25. I previously disclosed a meeting between defendants and Nickelodeon in San Francisco. The private and sensitive corporate information publicly disclosed here details limited activity that ultimately did not result in any contract or project, as stated.

26. It is true that San Francisco based Shockwave, with whom Skunk Studios does business, was purchased by Viacom in 2006.

27. It is true that more than five years ago, Skunk Studios did build a web game for VH1.

28. Plaintiff is the only person who interacted with the individuals listed in this paragraph. Yet to my knowledge no actual contract or distribution agreements arose.

29. Plaintiff's claim that all defendants have sufficient business relations with Viacom is stultifying. The only limited relations are with Shockwave.com that is still based in San Francisco. Most if not all other correspondence was conducted by Margaret Wallace, not defendants.

### IV. Oberon Media, Inc.

30. It is a fact that income from Oberon Media comprised only 2% of total income for Skunk Studios in 2006. This calculation comes directly from our financial records.

31. It is true that monies were loaned to Skunk Studios by Oberon. It is unbelievable to me that plaintiff, as a shareholder of Skunk Studios would provide this sensitive and private corporate information in a public forum.

32. Plaintiff claims that my calculation that 2% of Skunk Studios' total income is derived from Skunk's dealing with Oberon is a low estimate. However, it is not an estimate, but rather a factual calculation from our financial records. Wallace puts forth a massive half-truth when she asserts the parties' distribution agreement is worth several million dollars, a hugely inflated estimate that she cleverly prefaces with 'upon information and belief' due to it's exaggerated nature.

33. My statements are accurate in regards to *defendants* meeting with Oberon, and our current business contacts being exclusively with their Seattle office. It is my understanding that any contact with Oberon in New York would have been by plaintiff.

### V. Nickelodeon, Inc.

36. The claim that *defendants* only met once with Nickelodeon, in San Francisco, is true and not a misrepresentation as claimed.

37, 38. Margaret Wallace apparently held a few meetings, of which I was either unaware or did not remember, which eventually led to no project as previously asserted.

## VI. Eyeblaster, Inc.

39, 40, 41. As I previously asserted, there was never any "negotiation" between Eyeblaster, Inc. and Skunk Studios. The definition of the word "negotiation" is: "mutual discussion and arrangement of the terms of a transaction or agreement". There were a few emails to evaluate the technical feasibility of implementation, which resulted in the conclusion that it was not possible with current technology. Exhibit N to plaintiff's affirmation shows these emails, which cannot be considered negotiation as no terms were discussed.

42. I do not believe that the mass of paperwork submitted here does anything to prove untruthfulness. Again Ms. Wallace mis-reads documents to say things that they do not.

## VII. Skunk Studios New York Client Base

43. Ms. Wallace levels claims of misrepresentation regarding my assertion that it is impossible to determine what percentage of Skunk Studios' worldwide user base lives in New York. Her absurd and wild guess that 1/8th of Skunk Studios user base lives in New York is completely without support. Determining the worldwide user base in New York would indeed be extremely challenging, since our games are distributed by dozens of partners throughout the world, and none of these partners ever provides even the most basic demographic information with their royalty reports.

44. and 45. Skunk Studios could, with painstaking effort, determine our New York customers in one channel, our website. However, I tried it and discovered that there is no automatic query which allows us to pull orders for a specific state or city, which means the orders would have to be tallied one at a time. As our website is only a small percentage of our business, it certainly does not provide an accurate view of our worldwide customer base. Yes, Skunk Studios could request such information from each

of several dozen partners, but it is unknown how many could or would comply. Thereafter this data, if provided, would have to be totaled and calculated to approach a reasonable estimate of New York users. Unless Wallace had taken the above steps, the 1/8th figure is simply an irresponsible guess made in an attempt to mislead this court.

### VIII. Dilution

46, 47, 48. Plaintiff's statements in these paragraphs seem to suggest again that defendants have diluted her or that we are being coy or playing semantic games with the court. I have already affirmed, under penalty of perjury, that defendants have not diluted plaintiff. It has nothing to do with the injunction, as she claims the dilution occurred prior to imposition of the injunction. I usually don't like to use such strong words, but plaintiff is lying to the Court. <u>Any suggestion that we diluted her is patently false</u>.

### IX. Testimony of Nick Fortugno

49. Plaintiff claims that her business partner, Nick Fortugno has had ongoing discussions with Skunk Studios about its business and that his "testimony would be illuminating." This is a good example of plaintiff's attempt to mislead the Court about discussions between Skunk Studios and others. She alleges that Fortugno had "ongoing discussions with Skunk Studios about its business." Technically this may be true, as Margaret Wallace, who is in a relationship with Fortugno, may have provided him with all sorts of information about the corporation. Defendants, however, did not share any relevant information with Fortugno about the share allocation or alleged dilution. To the extent that Fortugno has information about the internal workings of Skunk Studios, I question whether plaintiff has divulged confidential company information.

### X. Conclusion

50, 51. Margaret Wallace has brought forth a lot of communications, and a lot of paperwork, with a few bits of new information. None of this changes the fact that Skunk Studios has very little contact with New York and certainly is not engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding

of Skunk's presence in New York. Skunk Studios has no office, bank account or other property in New York. It does not have any employees in New York and does not regularly solicit business in New York.

_____
KALLE WIK

State of California
County of San Francisco
Sworn to before me this
25 day of July, 2007.

_____
Notary Public

HAZEL JANET SALESSI
Commission # 1628667
Notary Public - California
San Francisco County
My Comm. Expires Jan 8, 2010